May it please the court, counsel for the government, my name is Ezra Spilkey and I'm representing the appellant, Anthony Rodriguez, who is before this court challenging his sentence of 108 months because it was based on an erroneous finding that he committed the offense in connection with another crime, namely attempted murder. Based only on what the district court observed in a surveillance video, the court found that the appellant. Yes, Your Honor. Yes, the crime as charged and as pled guilty to was 922 G1, felony in possession of ammunition. Yes. No, Your Honor, it was not. Well, I agree with Your Honor, and I believe that the Bronx district attorney is the proper venue for such a question. Mr. Rodriguez is basically being punished without the complete process of a trial and without being charged. The first notice that Mr. Rodriguez got that he was going to be — that he might be punished, that he faced punishment for attempted murder was in the government's letter. But he has never been charged with attempted murder. That's correct, Your Honor. He has not. Now, the government — And you were going to say the government's letter, the Pimentel letter? The Pimentel letter, yes, Your Honor. Thank you. I was searching for the word. Now, the district court's decision was based solely on video footage, which captured without any sound the appellant firing a weapon. Now, there's no dispute that he fired a weapon. There's no dispute that he brought the weapon to the — to his vantage point where he shot. There's no dispute of many of the actions that he took before firing the shots. There's no dispute over how many shots he shot. So what is our, I guess, standard of review is the phrase I want when we review what it is that Judge Nathan determined. And it seems to me she laid out in a couple of pages of transcript, I won't read them to you, but how she reached the determination that she reached. Now, Your Honor, we argue that the de novo standard holds here, and the government — Because she made a determination as a matter of law that this set of undisputed facts — That's right, Your Honor. Constituted adequate proof of a mental state that would support attempted first-degree murder? That's correct, Your Honor. And we filed a 28J letter citing United States v. Hawk, which Your Honor was on the panel for. We believe that that is completely analogous. That case dealt with — United States v. Hawk was — dealt with the voluntariness of a confession. The district court viewed a video that captured audio as well, but the district court did not rely solely on the words spoken. In that regard, it could have just relied on a transcript of the interaction between the suspect and the police officers. Rather, the district court, and then later on, this court, noted and observed what the demeanor was and what behavior — what the tenor of the conversation was. It was not — The behavior here was not just the firing of four shots. He was waiting for the car coming down the street. He came out in front of it, shot four shots at the windshield, calmly walked away, got on his cell phone, met up with a friend, and went into an apartment building. Doesn't — that sounds like it wasn't something where he was surprised or he reacted to violence directed at him. How can you not draw an inference that it was premeditated intent to kill under those circumstances? Well, Your Honor, we don't dispute that — well, rather, there's no — we made no effort to show any justification that this was — that the shooting was done in the — in the heat of passion or something like that, that there was any legal justification for it. Rather, we just simply can't tell. And the fact that — Can't tell what? Well, Your Honor, that — what the intent was, what the specific intent was. Now — now — But that — For instance, the district court viewed the video and saw someone acting calmly. I saw someone acting — who was full of adrenaline and sort of pumped up. I didn't see someone who was — who was — who could just go the very next moment and have a conversation with his mother, let's say. So we all saw very different things from the same video evidence. All right. We saw different things, and therefore, we each have a different view of what the facts are, and therefore, why don't we leave it to the district court to make a factual determination, which we then review for clear error? Because it's a — the district court came to an ultimate legal conclusion on a mental state. And the facts were — as in Hawk, we have the exact same — this Court has the exact same material to look at as the district. But the legal conclusion as to the mental state is still a factual determination, is it not? It is, Your Honor, but in the same way that — in the same way that voluntariness of a confession is, which was what was found in Hawk. The — We would have heard if we had audio. He didn't say anything. What would you — what would we have gained from an audio accompaniment to the video? Well, I'm not sure, Your Honor, but the — every other case, every case that the district court cited had other evidence to show specific intent to kill. There's no other case that I'm aware of or that the government has brought to the court's attention that has anything other than — that has a conclusion of specific intent to kill based solely on video footage. I'm not sure what audio would have — Well, how many cases are there out there that have sort of this issue before them? Not many in the — Right. So aren't you asking us essentially to write a rule that says no trial judge can look at video footage and determine from the way the person — observing the way the person behaved a state of mind? Well, no, Your Honor. I mean, one could find a specific intent to kill based solely on video footage on different facts. In those other cases that the government cites and that we cite, there's — for instance, in United States v. Stroman, that's a foot chase into a deli. And when the shots are fired at close range, it's on foot, and you have a stationary target. Here we have not an automatic weapon, a rapidly moving target. And basically, in the Stroman case, you just have different facts. You can find a specific intent to kill based off of only video footage, but just not here. Because the car was moving too fast? Both because the car was moving too fast, because — What if you had a real dumb person, stupid person, who thinks she's a hotshot and can hit any winging target and, you know, has a specific intent to pick off somebody in a car who's driving by? Well, we just don't have that from the video here. If there was other evidence of that, then maybe, yes, that could support a specific intent to kill. Okay. I see that my time is up, and I'll reserve the rest of my time for rebuttal. Yes. Thank you. We'll give you two minutes. Thank you. Thank you. Good morning, Your Honor. May it please the Court, my name is Jason Richman, and I'm an assistant United States attorney here in the Southern District of New York. I represented the government in the proceedings below, and I represent the government on appeal today. The district court thoroughly examined the record before it, all of which pointed to the conclusion reached by Judge Nathan that the defendant engaged in an intentional, premeditated, attempted murder on the afternoon of October 26th of 2015. As such, the district court correctly applied the sentencing guideline for attempted first-degree murder, and the judgment should be affirmed. As Your Honors are aware, the evidence before the district court consisted of a series of surveillance videos from the afternoon of October 26th, 2015. Based on these videos, the district court made several inferences and found several related facts in support of its conclusion that, A, the defendant acted with a specific intent to kill his target, and, B, this act was premeditated. First, Your Honors, the district court found several related facts which contributed to its determination that the defendant acted with malice aforethought or with the specific intent to murder the occupant or occupants of the vehicle. More specifically, at page 104 of the record, the district court found that the manner of the shooting, and more specifically, that multiple shots were fired at a close target, evidenced his intent to murder. In addition, Your Honor, I note that courts have found that behavior before a shooting, such as in this one, including bringing a gun to the scene of the shooting, can support the intent with which the act itself was done. Alito, just to follow up on Judge Schacht's question, you argue for clear error review, right? Correct, Your Honor. Is it different when the facts presented to the district court in that video are exactly the same to us? I mean, there's nothing that Judge Nathan relied on other than the video that we can see for ourselves. Does that make a difference? Your Honor, it does not in this case. In this case, Judge Nathan drew inferences from the facts that were presented to her. The significance of the evidence before her was certainly argued by counsel. As Your Honor got to with his question to defense counsel, those inferences are certainly still being contested. Judge Nathan was the appropriate venue in which those determinations were made. I appreciate, Mr. Richmond, that you said in this case it wouldn't make a difference. Could you give us or give me an example of a case in which it would make a difference? I'm trying to figure out where this line gets drawn. Certainly, Your Honor. I think Your Honor's question's got to the point, which is that these are factual determinations. Specific intent and premeditation are factual findings by the district court. As cited in our brief, as this Court has found in summary order, as circuits throughout the country have determined, and as if this had gone to trial, a jury or a bench trial, a judge would have determined, these are factual findings. In Hock and in the cases it cites, voluntariness is a legal determination. And I think the Hock opinion emphasized that on uncontested facts, particularly a legal determination is reviewed de novo, whereas a factual determination, such as these determinations at issue, continue to be reviewed for clear error. And the factual determination then gives us or leads to the legal conclusion of which guideline provision applies? Correct, Your Honor. And I don't think anyone today is contesting that premeditation plus a specific intent to murder equals attempted first degree. Exactly, Your Honor. Exactly. And moving forward, Your Honor, and pointed to your questions, if it is not just that the district court is the arbiter of credibility, of witness credibility, such that an uncontroverted record means that there should be de novo review, there are other justifications behind why the deference is granted to the district court, including that the district court is the traditional finder of fact, including that it promotes judicial efficiency and things like that, and including that. But that's because the district court can see things that we don't. In other words, when you make a credibility determination that the district court does, it watches the witness, it uses common sense, it uses the triggers that we instruct jurors about to conclude whether a person is lying, telling the truth, or might be weighing different evidence. So that's why we have this deferential standard of review of the district court. But here, where there's nothing the district court relied on other than the record, why should we defer to her viewing of that video when it's really no different than our viewing of it? The district court, as the traditional finder of fact, and as the venue in which inferences were drawn from the evidence put before it, should be granted that deference, both as its traditional role as finder of fact, and also, Your Honor, among other reasons. I know the reasons for them, too, but it's just kind of an odd circumstance where there's absolutely nothing in the record other than the video that led to Judge Nathan's conclusion here. So why should we defer to that when we're watching the exact same video without any kind of credibility determination? Your Honor, among other reasons, I think there is a public interest in judicial economy and stability, and that is promoted by treating the district court in its traditional role as a finder of fact. The legitimacy of a trial court in the eyes of litigants could be impacted if, on a record, a de novo review was done of factual findings. It would multiply appeals by endorsing the retrial of factual issues, and it would reallocate judicial authority when Judge Nathan heard argument, was in perfect position to make her determinations based on those arguments, and made factual findings that are traditionally within the province of the finder of fact, which Judge Nathan was in this case. So our only review just is, then, for clear error? Correct, Your Honor. And I would, just to put a finer point on it, under any standard of review. That was a question, by the way. Under — yes, correct, Your Honor. And under de novo review, even, the government would submit that in this case the judgment should be affirmed. Absent questions from your Court, Your Honor, the government would generally rest on its brief. The district court thoroughly evaluated what was before it. It found multiple pieces of evidence leading to its factual determinations regarding the defendant's intent, and regarding the fact that the defendant acted with premeditation. Your Honor, got to some of those regarding premeditation, including his behavior before, his behavior during, and his behavior immediate subsequent to the shooting in question. I would also note the following point, which Judge Sack was asking about, I think, earlier, which is, what happened to the people in the car, do we know? Oh, we do not know, Your Honor, we don't know. Nobody knows? We do not know. Nobody hit anybody, huh? We don't know if he hit anyone, Your Honor, as is evident by his arm position. Again, this speaks to, I think, why the district court drew, was the correct place for inferences to be drawn, defense counsel at sentencing. Asking a curiosity, you fire four rounds into the windshield of a moving car when you're standing in front of it, the car takes off, and we don't know if anybody got hit, but the district court makes a finding of attempted murder. I mean, were there, do we know how many people were in the car? Do you have any background, why he was shooting at this car, anything like that? There was nothing before the district court. I would point, the district court did have before it, of course, the defendant's other conviction, his guilty plea as to the July 2014 shooting, which occurred a block away. But in terms of the attempted murder of the occupants, we don't know anything about the occupants of the vehicle or what happened to them, Your Honor. And I have one other question, because I sort of watched it back and forth and back and forth, and I'll ask Mr. Spilkey as well. Who was the guy across the street? Your Honor, we don't know. I would submit that it does, again, sort of speak to the defendant's, both his premeditation and his intentional act. There's someone who walks next to him on the sidewalk, and there is someone who walks across the street. Defendant doesn't just choose a target at wild and randomly shoot at either of those individuals. He waits and is lying in wait for his target. When that target approaches, he takes aim. Thank you. Thank you very much. Mr. Spilkey, you've reserved some time. Yes, Your Honor. I'll answer your question about whether we know who the other gentleman is on the other side of the street. I do not know. The record isn't complete on that, and it was never at issue in the district court. Now, my colleague characterizes the district court's decision as a finding of fact, and I differ with that. And I would cite United States v. Gotti, and quote, in determining the appropriate standard of review for a district court's application of the guidelines to the specific facts of a case, it should follow an either-or approach. This is Judge Newman's decision, right? This is United States v. Gotti, 459. It's from 2006. I'm not sure. I think it was Judge Newman helping this Court articulate the standard that you're trying to – well, that both of you are trying to tease out for us. No, right. Now, it's not – So why, when he says that – why, when the Court, this Court, says that, that we look – that it's a matter of law as to which – which guideline is applied to the facts, we still have to determine what the facts – somebody has to determine what the facts are before we figure out the legal issue of which guideline applies? Well, not – not if the facts are completely uncontested, as they are here. And my colleague refers to inferences from the facts, but that is – it's – it's – what the Court was doing is applying uncontested facts to uncontested elements and then coming out with a final legal determination on the guidelines. Well, an element had to be determined to figure out which guideline. 2A1.1, I'm getting the number, but you know the one we're arguing over. Yes, Your Honor. All right. So the Court had to – had to figure out some facts to determine which guideline to apply, right? Well, yes, of course, Your Honor, but the facts were uncontested, so – But – but there was an element, the – the knowledge element you're not going to divine from anything other than infer – make drawing inferences from what one observes, right? That's right. When we have – Or the mental state element, I should say. That's correct, Your Honor. When we have such a limited record – All right. And your argument, as I understand it, is, look, you – there – you can't infer intent from what you, the fact finder, or what the fact finder below, and we, the fact finder, you're trying to persuade us otherwise, can see in – based on what's going on. Not in this case, Your Honor. That's right. It's – it's in – it's the – the facts are in equipoise. There – you can't – the government has not met its burden of a preponderance of the evidence. So do you always need a witness, in your view, that somehow adds that element? Not at all, Your Honor. What would be necessary to have seen in the video for us to affirm the district court? I think that there would be – this would be a much closer question if there was an execution-style shooting, if there was – No, but in this case, is there anything – Or because it was a car driving by and he took four shots at it? With a non-automatic weapon, yes. I – I would say that there is no – That one can never – even if one actually absolutely has an intent to kill somebody in the car, you could never infer that from watching somebody dump four shots into the windshield of a – of a car that was coming by, that you'd been lying in wait for. No, Your Honor. I'm not saying that. If – if – if he had disabled the car somehow and it was able – it stopped not shoot a person – well, I guess he could shoot the driver and that would sort of disable the car. Or the tire. But, Your Honor, I'm – I mean to say that – But if he shot the tire, you'd be arguing – and that's all he got to shoot. You'd be arguing that there was no intent to kill anybody because he was just shooting the car. Well, if he had continued shooting at the stationary car, then this would be a much closer case, absolutely. Okay.